May it please the court, I'm Richard A. Finkel, I am counsel for Mr. Armstrong. The gravamen of our application to this honorable court is that we have accused the government of serious errors. We seek an opportunity to appeal to this honorable court because if Mr. Armstrong is not released, since the appeal will clearly take more than three months, there will be no decision and he will have already completed his three-month sentence. We emphasize most respectfully that the government does not deny our charges of misconduct. Can I ask you a question about that? Supposing what happens, what you fear happens, happens. Is it true that because he's out of prison, he no longer has an appeal to this court to clear his record? Technically he does. I understand it won't do him any good. Technically, but as a practical matter, he doesn't. In order for us to file briefs, the government to reply, for us to have argument before this court to decide, he will have served his three months. No, no, I understand that. My question is whether it isn't appealable, whether we couldn't hear it even after he gets out of incarceration because if he hasn't been properly found guilty, he should be acquitted. Again, I believe technically yes, but as a practical matter, the right to appeal is vitiated because of the time period. Our first point against the government is that the government withheld Brady material that was specifically requested by us. The Brady material that was withheld specifically disproves their allegation that he missed at least one of the drug testings. He didn't. And there were five, right? There were five, yes. What about the other four? The other four, that's interesting because the second part of our argument in this respect is the probation department made false claims, and that was the basis of their initial report to the court. Their false claims included the allegation that Mr. Armstrong intentionally avoided Monday random testing because it followed the weekend. When we received the schedule after the plea, it showed that he, Monday after Monday after Monday, I believe it was six Mondays in a row, he actually went for testing. Was it the same testing? One of those were. The others occurred, one occurred on a Tuesday and one occurred on a Wednesday. But the point that we're making is key to his decision, and this is why it's material, key to his decision as to whether to plead guilty or whether to risk cross-examining a probation officer or officers who carry significant credibility automatically with the district court was whether there was impeachable information. And this court held in Mahaffey in 2012 that when withheld material is both exculpatory and impeachable. But did he deny that he missed the four RUT tests? Yes, Your Honor. As far as we know now, yes. I don't believe, it's, I'm sorry. As far as we know now, yes. As far as I know now, yes. He took one test and missed the other four. But very important, we did not receive all the notes of the probation officers. And what exactly the probation officers told Mr. Armstrong when he signed up for the random testing program, and maybe more importantly, after he missed any of those random tests, is important in determining whether he intentionally and knowingly missed a random test. And that's the crux of pleading guilty, whether you intentionally or knowingly. And that's the information that this court in Mahaffey in 2012 made the point of saying, when information that is withheld is both exculpatory and impeachment, it's especially important. If I may quickly go to our second point, the government said at sentencing that Mr. Armstrong, quote, had not paid back any of his back taxes, unquote. And now they tell this court that that was not materially false, quote, not materially false. How could they say that? That demeans the position of the government. He made 16 payments, and the payments he made to the district court was because the probation department told him to make those payments to the district court. And the exhibit that we provide, the list of receipts, that was provided by the probation department to Mr. Armstrong. And I suggest to the court that if he hadn't made payments, that that would have been a third charge in the violation of probation. So finally, as I see my time is up, may I conclude by saying, repeating, sending Mr. Armstrong to jail immediately will preclude his review by this court because he'll serve the three months. And most importantly, we respectfully submit that the government's misconduct in this case necessitates a review on the merits by this court. Is he incarcerated right now? No, he's right here in the courtroom, Your Honor. All right. And he has a report to make, right? He doesn't have, his date to report, you mean to prison, Your Honor? If he does not get bail, does he have a date set? No, but I'm sure the district court will immediately set a date for him to surrender. We don't need to worry about that here. Not yet. This court has stayed his surrender. I just didn't know whether there was a date out there. There is not. It's been stayed by this court. Thank you. Good morning. May it please the court. My name is Alicia Washington and I'm an assistant United States attorney in the Eastern District of New York. The government today respectfully asked this court to deny the defendant's motion for bail pending appeal because he fails to raise a substantial issue of factor law that is likely to result in a reversal of his judgment or a sentence that doesn't impose a term of imprisonment. The defendant has raised two issues against the government, both of which are meritless. First, he argues that the government withheld exculpatory material prior to the entry of his With respect to the first issue, the additional tests that the defendant relies on that were provided prior to the imposition of sentence were tests that were taken at a drug rehab facility. The tests that were taken at a drug rehab facility are separate and apart from the defendant's requirement to report for random urinalysis drug testing. To probation. That's correct, Your Honor. The defendant signed a contract with the probation department that he will report on days when the color red was mentioned on the telephone answering service. And not only was that, uh, did he sign that contract and was that contract explained to him, but later on, uh, after April 3rd, 2017, when he was participating in this program, probation continued to remind him. And in fact, what is mentioned in the violation of probation report is that probation multiple times told him that the rut program is separate and apart from the testing that is done at the drug rehab facility. So he needed to do whatever the rut program wanted to do. But in addition, he needed to do what probation told him by giving code red. That is correct, Your Honor. And one other note. I know the defendant makes, uh, relies in part on a November 25th, 2015 report. It's a summary report that probation, um, had where there's some indication that the probation officer said, well, if you, um, are getting tested at the drug rehab facility on the day that your color comes up, that's fine. However, the probation officer still told him you have to report to central ISLIP if your color comes up. But irrespective of that fact, that report and that instruction was 16 months prior to his signing the contract that started April 3rd, 2017. So his reliance on that is misplaced. And moreover, that report was provided prior to his plea to the probation violation. With respect to the second allegation about the government making a misrepresentation at sentencing, uh, the government, uh, didn't make a statement that it knew or should have known was false. It quoted the violation of probation report. And it's merely one aspect of what the point the government was trying to make. The government acknowledged that the second charge, which was the defendant's failure to provide financial documentation, um, was part of a pattern of the defendant's poor adjustment to probation. So in other words, the government mentioned, we're dismissing this charge, but your honor, we just want to remind you that it wasn't until your honor put him in jail that then he started to comply and was willing to provide the financial documentation. So that was the context. Um, the defendant had an opportunity to make the district court aware of his financial condition at sentencing. As part of his motion for bail, uh, to the district court, the defendant provided these receipts and documentation about any payments that were made towards restitution. And, uh, the district court still denied his motion for bail. And I will note that, um, it's unlikely that the government's statement had any effect on his sentence. And in, in addition to, uh, addressing this issue of, of, uh, the payments that were made, I think the, the district court in some ways had a fuller picture of the defendant's probation behavior because the defendant filed a number of the summary reports, uh, that outline, uh, the difficulties that probation had. So, you know, the district court had the opportunity to, to look at those summaries, um, as part of the defendant's submission, as well as any payments that were made towards restitution. So it's the government's position that, uh, any statement that was made with respect to, uh, what payments were received or not received by the IRS were, were not material. So, uh, do you agree with Mr. Finkel, Ms. Washington, that, uh, you know, likelihood given the usual scheduling by the time this appeal is heard, uh, Mr. Armstrong would have finished his sentence? It is likely he would have finished his sentence. Um, suppose there could be expedited briefing, but even still, I don't know how long that would take. It may be that he would serve the three months. Thank you. Thank you. Um, Mr. Finkel, if I could just ask you, how quickly could you, I'm sorry, how quickly could you get this brief? It occurs to me that perhaps the filings already made in connection with the bail motion could be relatively quickly converted to a brief if this court could accommodate argument or take it on submission in short order. We could accommodate, uh, an expedited schedule. Yes, Your Honor. A great portion of the, a portion of the brief certainly has already been prepared based upon the papers we already submitted. There are some additional cases such as the Mahaffey case that I would add, but yes, we could do it. We could work with an expedited schedule, Your Honor. Yes. All right. Well, the court will give that some consideration. Ms. Washington, I should ask the government as well. Yes, an expedited schedule would be fine if we could convert what we filed here. Yeah, that seems to the court that is, is possible. Okay. Thank you. We'll, we'll reserve decision, but we'll get you, get you a decision on this motion very quickly, so. Thank you, Your Honor. The first case on